## 10319

### GIBSON *ET AL.* v. GIBSON *ET AL.*

#### (101 S. E. 922.)

WILLS—DEVISE TO "HEIRS" HELD TO MEAN CHILDREN AND TO EXCLUDE HUSBAND OF DECEASED DAUGHTER.—In view of the entire will appointing testatrix's two sons testamentary guardians of the children of her deceased daughter, etc., the word "heirs" *held* construable as "children" in the will, giving testatrix's property to her husband for life, then devising her lands in two counties, in three tracts or parts, one each to the two sons and to the "heirs" of the deceased daughter, and hence the daughter's surviving husband did not take.

Before WILSON, J., Orangeburg, Spring term, 1919. Affirmed.

Action by B. O. Gibson and others against Delle Nora Gibson and others. From judgment for plaintiffs, defendants appeal.

The following is the master's report:

On October 28, 1899, Frances J. Salley, late of the county of Orangeburg, in this State, departed this life, leaving of force her last will and testament, which was duly admitted to probate in the office of the Judge of probate for this county, and is as follows: (See will as set out in opinion.)

The executors named in the said will, O. Brice Salley and Boyce O. Salley, duly qualified, and letters testamentary were issued to them in due form. Nathan W. Salley, the husband of the testatrix who surved her, died February 18, 1903. The said Frances J. Salley owned the real estate mentioned in the will, and the subject of this action, at the time of her death.

Narcissa C. Gibson predeceased her mother, the testatrix, by several years, the date of her death being July 11, 1895. Her children surviving her and living at the time of the death of the testatrix were the plaintiffs, B. O. Gibson, Nathan L. Gibson, Hessie S. Jordan, Blanche W. Gibson,

and Meta D. Bass.   The said Nathan L. Gibson died October 18, 1915, and left surviving him as the heirs at law and distributees of his estate, his brother and sisters, the plaintiffs, B. O. Gibson, Hessie S. Jordan, Blanche W. Gibson and Meta D. Bass.

The husband of Narcissa C. Gibson, Paul E. Gibson, also survived her, and was also living at the time of the making of the will by the testatrix, Frances J. Salley, and at the time of her death.   He died August 5, 1913, intestate, leaving surviving him as the heirs at law and distributees of his estate, his widow, the defendant, Delle Nora Gibson, who has since intermarried with one Bizzell, and his children by his first wife the before mentioned B. O. Gibson, Nathan L. Gibson, Hessie S. Jordan, Blanche W. Gibson, and Meta D. Bass, and also his children by his second wife, the defendants, Herman E. Gibson, Frances L. Gibson, Paul E. Gibson, Mary Verne Gibson, and James Louis Gibson, all of these children by his last marriage being minors and reside with their mother, the said Delle Nora Gibson.

It is admitted by the plaintiff, B. O. Gibson had sold his interest in the real estate involved in this action to the plaintiff, W. J. Bass.   It appears from the testimony also, and does not seem to be questioned, that Nathan L. Gibson in his lifetime agreed to sell his interest in the land in question in this action to the said W. J. Bass for $790, and receipts are submitted, signed by the said Nathan L. Gibson and dated August 15, 1914, for $200 and October 17, 1914, for $15 as part payments by the said W. J. Bass for his interest in said real estate.

Upon these facts my judgment leads me to the following conclusions:

As has been indicated above, the only question about which there is any controversy is as to whether or not Paul E. Gibson, the surviving husband of Narcissa C. Gibson, deceased, his widow, Delle Nora Gibson, and his children by his second marriage to her claim that under the terms of the

will that the said Paul E. Gibson took an interest in the property as one of the heirs of his deceased wife, the said Narcissa C. Gibson. It should be noticed that the said Narcissa C. Gibson died several years before her mother, the testratrix, and the clause in the will devises the property "to the heirs of my deceased daughter, Narcissa C. Gibson."

The intention of the testatrix must be ascertained from the will itself. This is elementary, but under the well known rule of construction the context is properly considered in seeking the intent of the testatrix, if it throws light on any provision which may be in question. In the case at bar it is to be determined who are to take the devise of tract B, given "to the heirs of my deceased daughter, Narcissa C. Gibson," or, in other words, did the word "heirs" have a technical meaning, as it is claimed, and include the surviving husband of Narcissa Gibson as well as her children? The will provides in the fourth clause that the two sons of the testatrix shall be the testamentry guardian of the children of Narcissa Gibson, with the understanding that if either of them die, the others shall take, and if all die without issue the property is to revert to the direct heirs of the estate. In the residuary clause the devise and bequest is to "my daughter's living children." It is significant that the testatrix commits to the management of her two sons the property which passes under the will to the children of her deceased daughter. Ordinarily it would have been most natural for the testatrix to have given the management of the affairs of the children of her deceased daughter to their father, and especially so if she intended that he should have an interest in the property, for in taking care of his own interest he could look after theirs as well. The truth of the matter is that the will shows a special solicitude as to the children of her daughter, Narcissa, as not only evidenced by the reference above mentioned, but as well by the special provision in their favor in the sixth clause of the will, direct-

ing her executors to allow them during their infancy a sufficient sum for their support.   On the other hand, there is an entire absence in the will of any reference whatever to their father, Paul E. Gibson, and a careful consideration of the will in all its parts as they relate to the property going to Narcissa's children convincingly leads to a conclusion that the term "heirs" was not used in its technical sense, but was used synonymously with one term "children."

The provisions of the fourth clause, constituting Boyce and Brice Salley testamentary guardians of Narcissa's children, are followed by what appears to be, on a casual reading, an attempt to create a limitation upon the estate given to the said children in the second clause of the will.   By the second clause the estate given to Narcissa's "heirs" (children) is the same as that given to the two sons of the testatrix; that is, a fee simple estate.   The fourth clause which relates to the appointment of testamentary guardian for the children of Narcissa, links such appointment "with the understanding that if either of them die, the others shall have his or her share, and if all of them should die without issue the property to revert back to the direct heirs of the estate."   It appears to me that this "understanding" provision, attached as it is to the appointment of the testamentary guardian, was not intended to limit or affect the estate devised in the second clause of the will, but was to guard against conditions which might happen during the lifetime of the testatrix, such as the death of Narcissa's children or any of them.

Following the views expressed above, my judgment is that the children of Narcissa C. Gibson, living at the time of the death of the testatrix, namely, Berkely O. Gibson, Nathan L. Gibson, Hessie S. Jordan, Blanche W. Gibson, and Meta D. Bass, took a fee simple estate under the will; and that the defendants claiming through Paul E. Gibson, deceased, have no interest in the property.   The plaintiff, W. J. Bass, is

now entitled to the share of B. O. Gibson, having purchased the same, and, upon paying the balance due by him under his agreement with Nathan L. Gibson, is also entitled to that interest.

*Messrs. Wolfe & Berry,* for appellants, submit: *The appeal presents but a single question for determination by this Court—shall the word "heirs" in the will of Frances J. Salley, deceased, be changed by the Court to read and mean "children?" Intention controls in construction of written instruments, but "intention" is a term of art, and signifies the meaning of the writing:* 106 S. C. 306. *The word "heirs" will not be changed to read "children" unless necessary, and in order to relieve some otherwise insurmountable inconsistency:* 5 A. & E. Ency. L. (2d Ed.) 1092; 25 S. C. 290-292. *We are not at liberty, without support from the context, to conjecture some intention on the part of testator at variance with his expressions:* 9 Rich. 464; 30 S. C. 464. *As a rule the word "heirs" will not.be construed to mean "children" unless the context or the surrounding circumstances make it clear and evident that this was the purpose and meaning of the testator:* 15 A. & E. Enc. L. (2d Ed.) 1092; 24 S. C. 314; 16 S. C. 220.

*Mr. Thomas M. Raysor,* for respondent, submits: *It is always open to inquiry whether the testatrix used the word "heirs" according to the strict and proper acceptance, or in a more inaccurate sense to denote "children:"* 3 Rich. Eq. 158; 36 S. C. 44; 93 S. C. 182; 25 S. C. 289; 4 S. C. 16; 3 Strob. 66; 28 S. C. 238; 23 S. C. 42; 106 U. S. 83; 15 A. & E. Enc. 324; 3 Strob. Eq. 211. *"Heirs" is very generally construed as meaning "children," where the context so requires, or where it is plain that it is used in a popular sense, as a word of description referring to a.certain class of persons:* 21 Cyc. 427. *"To effectuate the intention of*

*the testator, the words 'heir,' 'issue' and 'children' are habitually construed interchangeably:"* 24 Pa. St. 168; McM. Eq. 236.

January 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellants, in their argument, say:

"This appeal presents but a single question for determination by this Court: Shall the word 'heirs' in the will of Frances J. Salley, deceased, be changed by the Court to read and mean 'children?' The master concluded that the word 'heirs' should be changed to read and mean 'children;' and, upon exceptions and against our objection, Hon. John S. Wilson, presiding Circuit Judge, confirmed without comment this conclusion by his decree."

The will of Frances J. Salley is as follows:

"State of South Carolina, Orangeburg County. In the name of God, Amen!

"I, Frances J. Salley, of the State and county aforesaid, being of sound mind and disposing memory, do make and declare the following to be my last will and testament, hereby revoking and annulling all other wills by me made.

"1st. It is my will and desire that my husband, N. W. Salley, shall have and keep all my property real and personal during his lifetime.

"2d. I will and bequeath my land in said county and State as follows, which contains three hundred and ninety-six acres, and divided in three tracts, known as A, B and C. The A tract to O. Brice Salley, the C tract to Boyce O. Salley, and the B tract to the heirs of my deceased daughter, Narcissa C. Gibson, the tracts commence to number from east.

"3d. The tract in Aiken county, South Carolina, containing four hundred and twenty-five acres, I will to my sons, O. Brice Salley and Boyce O. Salley, and the heirs of my

deceased daughter, Narcissa C. Gibson, to be equally divided
in three parts, by commissioners appointed by them, and to
pass all necessary papers.

"4th. I hereby constitute my two sons, O. Brice Salley
and Boyce O. Salley, testamentary guardian of the children
of my deceased daughter, Narcissa C. Gibson, with the
understanding that if either of them die, the other shall have
his or her share and if all of them should die without issue
the property to revert back to the direct heirs of the estate.

"5th. All the remainder of my estate not herein men-
tioned, both real and personal, and everything of value I
may die possessed of, I give to O. Brice Salley, Boyce O.
Salley, and the living children of my deceased daughter,
Narcissa C. Gibson, to be divided among them, that is, one-
third for O. Brice Salley, one-third for Boyce O. Salley and
the other third between my daughter's living children.

"6th. I will that my executor during the infancy of my
daughter's children shall allow them a sum sufficient for
their support as they may seem best.

"7th. I nominate, constitute and appoint O. Brice Salley
and Boyce O. Salley, executors of this my last will and
testament.   In witness whereof I have hereto set my hand
and seal this 28th day of May, A. D./1896.   Frances J.
Salley.   (L. S.)."

Narcissa Gibson predeceased her mother, leaving a hus-
band, Paul E. Gibson, and several children surviving her.
If the word "heirs" is construed in its strict technical sense,
then the husband, Paul E. Gibson, took under the will and
his widow and the children of the second marriage takes as his
If the word "heirs" is construed to mean "children," then
heirs. If the word "heirs" is construed to mean "children,"
then the widow and children of the second marriage do not
take.

The case was referred to Hon. And. C. Dibble, master
for Orangeburg county, who made the report, in which he
construed the word "heirs" as used in the will to mean

"children," and excluded the widow and children of the second marriage from any interest under the will. Let the report of the master be reported.

The case was heard in the Court of Common Pleas before Judge Wilson, who confirmed the report of the master. From this decree this appeal is taken.

It is not denied by appellant that in proper cases the word "heirs" may be construed to mean "children." The question is, Is this such a case? The answer is, This is such a case. Where different words are used in an instrument, it suggests that different ideas were intended. The suggestion is not always to be followed. The question here is, what is the intention or meaning of the word as used in this will. The will provides for her husband and her own issue, except it may be for the use of this word "heirs." The fourth item of the will appoints her sons testamentary guardians of her grandchildren. It also provides for the disposition of the shares of the grandchildren, if they die without issue. There is no provision for a share for the son-in-law. A construction that gives a share to the son-in-law causes the testatrix to devise to the son-in-law an interest superior to that given to her own issue. That she had the right to do, of course. There may be cases in which a person may have a greater love for a son-in-law than for their own issue, and they have a right to prefer him in the will. That is not the case here. The will itself shows that there was a want of confidence in the son-in-law, at least as to his executive ability. The natural guardian of her grandchildren was passed over and her own sons were appointed testamentary guardians for her grandchildren. The will not only deprives the father of the custody of his children's property, but reposes in the sons of the testatrix a discretion as to the propriety of assistance in their maintenance and support, and the extent of it. Taking the will as a whole, it is very clear that the word "heirs" as used in this will means "children," and it is so construed.

The judgment is affirmed.